IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JESSICA LAKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: |
| ) | |
| PITTSBURG COMMUNITY ) | |
| SCHOOLS – USD 250, ) | JURY TRIAL DEMANDED |
| SERVE AT: ) | |
| 510 Deill Street ) | |
| Pittsburg, KS 66762 ) | |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW Plaintiff Jessica Lake and, for her cause of action against Defendant Pittsburg Community Schools – USD 250 (hereinafter "USD 250"), states and alleges as follows:

### JURISDICTION & VENUE

1. This Court has jurisdiction over this matter because this action alleges that Defendant engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §2000e, et seq. and Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §12111, et seq., as amended by the Americans with Disabilities Amendments Act of 2008, 42 U.S.C. §12101, et seq.

2. Venue in this district is proper pursuant to 42 U.S.C. §2000e-5(f)(3), as the unlawful employment practices alleged herein were committed in Crawford County, Kansas.

### PARTIES

3. Plaintiff Jessica Lake is an individual and a resident of Frontenac, Kansas.

4. Defendant USD 250 is a Kansas public school district which employs fifteen or more persons, such that Defendant is an "employer" within the meaning of 42 U.S.C §2000e(b) and 42 U.S.C §12111(5)(A).

## CONDITIONS PRECEDENT

5. Plaintiff timely filed a Charge of Discrimination with the Kansas Human Rights Commission, which was dually filed with the Equal Employment Opportunity Commission (hereinafter "EEOC") on July 12, 2021, within 180 days of her termination, alleging discrimination based on sex, disability and/or perceived disability, as well as retaliation as described in this petition.

6. Plaintiff received notice of her right to sue regarding the July 12, 2021, Charge of Discrimination from the EEOC by a letter dated April 20, 2022.

7. This Complaint is filed within 90 days of the EEOC's notification letter to Plaintiff.

## GENERAL ALLEGATIONS

8. Plaintiff was hired by Defendant USD 250 as a kindergarten teacher at Meadowlark Elementary School ("Meadowlark") in August of 2020.

9. Soon after hiring Plaintiff, the Principal at Meadowlark learned that Plaintiff was pregnant.

10. Two days before Plaintiff's contracted start date, Plaintiff was reassigned to Westside Elementary School ("Westside") to teach fifth grade.

11. At Westside, Plaintiff was supervised by the school principal, Kelsey Boulware ("Boulware").

12. As school principal, Boulware was an agent of Defendant USD 250.

13. Upon Plaintiff's arrival at Westside, Plaintiff informed Boulware that she was pregnant, with a due date of December 18, 2020.

14. In September of 2020, during Plaintiff's first evaluation, Boulware told Plaintiff that Plaintiff was sitting down too much.

15. Plaintiff explained to Boulware that she was experiencing back pain due to her pregnancy, and that standing increased her pain.

16. Plaintiff's ability to stand was substantially limited by the conditions of her pregnancy.

17. Boulware suggested that an appropriate accommodation for Plaintiff would be to provide Plaintiff with a podium upon which Plaintiff could lean for support.

18. Boulware never provided Plaintiff with such a podium.

19. Despite the increased pain endured due to not receiving the accommodation Boulware suggested, Plaintiff thereafter taught her students standing up, as Boulware insisted.

20. In October of 2020, Plaintiff informed Boulware that she was planning on taking the full twelve weeks maternity leave available to her under district policy.

21. Boulware responded that would be inconvenient for Boulware because it would be difficult to find a substitute teacher for that long, further stating that she had assumed that Plaintiff would only be taking six weeks of maternity leave. Boulware also told Plaintiff that no one else in the district had ever taken twelve weeks of maternity leave.

22. Plaintiff learned from her mentor that Boulware's statement that no other teachers had ever taken twelve weeks of maternity leave was untrue and that others had done so.

23. Plaintiff contacted the Human Resources department for the district and confirmed that the district policy permitted up to twelve weeks of maternity leave, six weeks paid and six weeks unpaid.

24. Boulware informed Plaintiff that while on leave Plaintiff would still be required to prepare detailed lessons plans for at least the first two weeks, meet with her mentor every six days, stay in contact with her substitute teacher, and enter her own grades.

25. In an effort to appease Boulware, Plaintiff agreed that she would only take nine weeks of maternity leave instead of the permitted twelve weeks.

26. Plaintiff began her maternity leave the day she gave birth, December 16, 2020.

27. On the same day that Plaintiff gave birth to her child, Boulware called Plaintiff and required her to prepare and send a letter to all parents of students in her class regarding a COVID update.

28. In February of 2021, while Plaintiff was still on maternity leave, Boulware contacted Plaintiff and asked how Plaintiff would handle parent-teacher conferences, stating that Plaintiff could either do them via Zoom, or Boulware would have to pay a substitute to cover the conferences.

29. Plaintiff's mentor, who taught the same children, offered to cover Plaintiff's parent-teacher conferences.

30. Boulware rejected this offer, stating that the parents did not want to hear from Plaintiff's mentor.

31. Boulware told Plaintiff's mentor that Boulware knew what it was like to have a person on maternity leave who did not want to do anything.

32. Plaintiff asked Boulware to have the substitute cover the conferences, because Plaintiff had not been with the students for several weeks and therefore lacked the ability properly assess their progress in that interim.

33. Boulware told Plaintiff that Boulware would send the parents a letter stating that the substitute would be handling the conferences.

34. When parents began contacting Plaintiff about the status of conferences, Plaintiff learned that Boulware had not sent the letter, and that the substitute had not held any conferences with the parents.

35. On March 1, 2021, Plaintiff returned to work from her maternity leave.

36. That same day, Boulware contacted Plaintiff about doing an evaluation.

37. The next day, Boulware conducted an unscheduled observation that yielded no negative comments.

38. Days later, on March 5, 2021, Boulware conducted a second unscheduled observation, again one that yielded no negative comments.

39. On March 10, 2021, Boulware conducted a third observation.

40. The report on this observation criticized Plaintiff for failing to address matters that Plaintiff had in fact addressed before Boulware entered the classroom.

41. On March 19, 2021, Plaintiff met with Boulware to go over the observations.

42. Boulware concluded by stating that Plaintiff had the choice of resigning or being fired.

43. Boulware told Plaintiff that she had let her students down by not meeting with their parents while Plaintiff was on maternity leave.

44. Boulware's complaints centered on matters that occurred while Plaintiff was on maternity leave.

45. Plaintiff stated that she would not be resigning.

46. On May 10, 2021, Plaintiff received a letter from Defendant USD 250 stating that they would not be renewing her contract for the following school year, terminating the employment relationship.

## COUNT I

### DISCRIMINATION ON THE BASIS OF SEX (PREGNANCY) IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED BY THE PREGANCY DISCRIMINATION ACT

47. Plaintiff incorporates by reference paragraphs 1 through 46 above as if fully alleged herein.

48. Defendant USD 250's asserted reason for not renewing Plaintiff's contract was a pretext for unlawful discrimination based on a sex, as defined by the Pregnancy Discrimination Act amendment.

49. Defendant USD 250's act of declining to renew Plaintiff's contract constituted an unlawful employment practice in violation of 42 U.S.C. § 2000e-2, as Defendant did not renew Plaintiff's contract because of her sex.

50. As a direct result of Defendant USD 250's violation of Title VII of the Civil Rights Act of 1964 as Amended, Plaintiff sustained damage including, but not limited to, lost wages, lost benefits, humiliation, and emotional distress.

**WHEREFORE**, Plaintiff prays for judgment in her favor against Defendant USD 250, for her fair and reasonable actual damages, for punitive damages, for reasonable attorneys' fees,

for her costs, and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II

**DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 AS AMENDED**

51. Plaintiff incorporates by reference paragraphs 1 through 50 above as if fully alleged herein.

52. Plaintiff's pregnancy constituted a disability as defined by 42 U.S.C. § 12102.

53. Defendant's treatment of Plaintiff by requiring Plaintiff to perform work while on pregnancy leave constituted discrimination on the basis of disability in that employees afforded medical leaves for conditions other than pregnancy are not required to perform duties while on leave.

54. Defendant USD 250 terminated Plaintiff because of the disability caused by Plaintiff's pregnancy and the leave that was necessitated because of Plaintiff's pregnancy, delivery, recovery, and maternal care.

55. Defendant USD 250's asserted reason for non-renewing Plaintiff's contract was a pretext for unlawful discrimination based on disability.

56. Defendant USD 250's act of non-renewing Plaintiff's contract constituted unlawful discrimination in violation of 42 U.S.C § 12112.

57. As a direct result of Defendant USD 250's violation of the Americans with Disabilities Act of 1990 as Amended, Plaintiff sustained damage including, but not limited to, lost wages, lost benefits, humiliation, and emotional distress.

**WHEREFORE**, Plaintiff prays for judgment in her favor against Defendant USD 250, for her fair and reasonable actual damages, for punitive damages, for reasonable attorneys' fees,

for her costs, and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT III

### RETALIATION IN VIOLATION OF TITLE VII OF
### THE CIVIL RIGHTS ACT OF 1964 AS AMENDED

58. Plaintiff incorporates by reference paragraphs 1 through 57 above as if fully alleged herein.

59. Defendant USD 250's asserted reason for non-renewing Plaintiff's contract was a pretext for unlawful retaliation based on Plaintiff's opposition of Defendant's unlawful employment practices.

60. Defendant USD 250's act of non-renewing Plaintiff's contract constituted an unlaw employment practice in violation of 42 U.S.C. § 2000e-3, as Defendant did not renew Plaintiff's contract because of Plaintiff's opposition of Defendant's unlawful employment practices.

61. As a direct result of Defendant USD 250's violation of Title VII of the Civil Rights Act of 1964 as Amended, Plaintiff sustained damage including, but not limited to, lost wages, lost benefits, humiliation, and emotional distress.

**WHEREFORE**, Plaintiff prays for judgment in her favor against Defendant USD 250, for her fair and reasonable actual damages, for punitive damages, for reasonable attorneys' fees, for her costs, and for such other and further relief as the Court deems just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable herein.

                      **THE MEYERS LAW FIRM, LC**

By:    */s/ Martin M. Meyers*
         Martin M. Meyers      KS # 14416
         mmeyers@meyerslaw.com
         4435 Main Street, Suite 503
         Kansas City, Missouri 64111
         (816) 444-8500
         (816) 444-8508 *facsimile*

         **ATTORNEYS FOR PLAINTIFF**